IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:18-cr-131 |
| v. | : | |
| ERIC BANKS | : | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

Presently before the court are Defendant Eric Banks' ("Defendant") motions to suppress physical evidence and statements allegedly made during an interview with law enforcement. (Docs. 26, 41.) For the reasons that follow, Defendant's motions will be denied.

## I. **Background**

### A. Procedural History

On April 18, 2018, Defendant was indicted on charges of (1) possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (2) possession with intent to distribute cocaine, in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and (4) possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant entered a plea of not guilty before Chief Magistrate Judge

Schwab on April 24, 2018, and was subsequently detained pending trial. (Docs. 13, 15.)

On November 5, 2018, Defendant filed a motion to suppress certain statements that he allegedly made at the time of his arrest. (Doc. 26.) A suppression hearing was scheduled for January 14, 2019; however, on the day of the hearing, Defendant stated that he wished to supplement his suppression motion to add an additional ground for suppression. (*See* Doc. 39.) Apparently, there was a miscommunication between Defendant and his counsel as to whether the new argument for suppression should have been included in the original motion to suppress. (*Id.*) The court granted Defendant's request to supplement his motion and continue the suppression hearing. (Doc. 40.) On January 15, 2019, Defendant filed his supplemental motion to suppress evidence, arguing that physical evidence obtained during a search of his home should be suppressed. (Doc. 41.) A hearing on the motion and supplemental motion was held on March 12, 2019. (Doc. 55.) The matter has now been fully briefed and is ripe for disposition.

**B. Relevant Factual Background**

On January 18, 2018, Officer Michelle Miller,[1] a member of the York Area Regional Police Department ("YPD"), submitted an application for a search warrant

---

[1] At the suppression hearing, Officer Miller testified that she had recently married and taken the name "Hoover;" however, the court will refer to her herein as "Officer Miller" for consistency with prior filings.

for 1145 E. King Street in York, Pennsylvania. (Doc. 52.) In the accompanying affidavit of probable cause (the "Affidavit"), she averred that she met with a confidential informant ("CI") who stated that he was able to purchase heroin from a black male known as "E." The CI noted that if "E" was unavailable, a white male would sometimes deliver the heroin. The Affidavit also included information about the CI's familiarity with heroin and heroin packaging and noted that the CI had previously provided reliable information to the YPD. Within 72 hours preceding the application for a search warrant, Officer Miller directed the CI to purchase heroin from "E" at 1145 E. King Street. Pursuant to standard YPD policy, Officer Miller checked the CI and determined that he held no contraband, weapons, or cash before the CI executed the controlled buy. Officer Miller observed a white male, later identified as Robert Maresch ("Maresch") exit the residence and meet with the CI. Immediately after their interaction, the CI turned over a quantity of heroin obtained from Maresch. A search of motor vehicle registrations revealed that Maresch's driver's license and vehicle registration listed an address of 1145 E. King Street. Based on these observations and discussions with the CI, Officer Miller averred that she believed a black male known as "E" and Maresch distributed drugs from 1145 E. King Street. A Pennsylvania Magisterial District Judge granted the search warrant that same day (the "Warrant").

On January 18, 2018, Officer Miller conducted a second controlled buy with the CI at 1145 E. King Street to positively identify the person known as "E." (Doc. 55, p. 15.) After the controlled buy, Officer Miller identified "E" as Defendant, who, at the time, had an outstanding arrest warrant related to firearms. (*Id.* at 16-17.) Because of this outstanding warrant, Officer Miller decided to execute the search warrant with YPD SWAT and Quick Response Team members due to concerns for officer safety. (*Id.*) Consequently, the warrant was not executed until the early hours of the morning on January 19, 2018. (*Id.*) On the morning of January 19, 2018, officers of the YPD executed the Warrant and immediately detained three people they found in the home: Maresch, Maresch's girlfriend, Erica Groff ("Groff"), and Defendant. (*Id.*) Defendant was found asleep in a bedroom, at which time he was awoken, handcuffed, and searched; other officers then searched the remainder of the home. (*Id.* at 18.) Defendant, Maresch, and Groff were handcuffed and taken to the dining area on the first floor. Officer Hoover then provided *Miranda* warnings to Defendant and Maresch. (*Id.* at 18-20.) Defendant acknowledged the warnings; however, there is some discrepancy in whether he did so verbally or with a physical head nod: Officer Miller testified that he nodded his head in acquiescence while Detective Craig Fenstermacher, who was present when Officer Miller provided the warnings, stated that he heard Defendant verbally acknowledge that he understood his rights as explained to him. (*Id.* at 48, 58-59.) Inside the residence, officers found

(among other things) suspected crack cocaine, suspected heroin, and four firearms. (*Id.* at 22; Gov. Exs. 1, 2.)

Detective Fenstermacher testified that he took Defendant to the second floor to have a conversation away from Maresch and Groff and that Defendant stated that he was willing to talk. (*Id.* at 60.) Detective Fenstermacher stated that Defendant did not appear intoxicated, was physically coherent, and understood the questions posed to him. (*Id.* at 60-61.) Defendant acknowledged that he resided at the house, that he believed there was heroin and crack cocaine in his pants pocket, that he was involved in selling heroin and cocaine, and that there was a gun in the room where the men were talking. (*Id.* at 61-62; Gov. Ex. 3.) Detective Fenstermacher then transported Defendant to the York County Drug Task Force office, believing that Defendant was interested in cooperating with the investigation. (*Id.* at 62.) After Detective Fenstermacher explained to Defendant that he would not be released that day, however, Defendant decided not to cooperate. (*Id.* at 64.) Detective Fenstermacher also asked Defendant whether he would be willing to make a written statement, and Defendant declined. (*Id.*)

At the suppression hearing, Defendant gave an account of the day prior and the early hours of January 19, 2018. He stated that it had been his birthday, and because of the celebrations, he was still too intoxicated to understand his *Miranda* rights at approximately 6 a.m. when the warrant was served. (*Id.* at 71.) Defendant

5

testified that he was in Philadelphia on January 18, 2018, shopping at outlet malls in the morning. (*Id.* at 78.) He arrived back in York around 10:00 p.m. and soon thereafter drove down to Baltimore, arriving there at approximately midnight. (*Id.* at 78-79.) He went out drinking for approximately 2 hours before eating at a restaurant in Baltimore. (*Id.* at 79.) He did not recall the approximate number of drinks he had during that two hour window, but stated he did not begin drinking prior to arriving in Baltimore. (*Id.* at 79, 81.) He departed Baltimore at approximately 4:00 a.m. and arrived back at 1145 E. King Street in York, at approximately 5:30 a.m. (*Id.* at 79.) Understandably, he immediately went to sleep; however, he was awoken less than an hour later when YPD executed the search warrant. (*Id.* at 79-81.) Defendant further testified that he never made any verbal admissions, and that he was "roughed up" by a "big dude" who was an officer of the YPD, resulting in a black eye and other injuries. (*Id.* at 84-85.)

## II. **Legal Standard**

The United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter*, 416 F.3d 256, 261

(3d Cir. 2005). "The applicable burden of proof is by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## III. Discussion

### A. Defendant's Motion to Suppress Statements

Defendant first argues that any statements he made to law enforcement prior to being *Mirandized* should be suppressed. In the alternative, Defendant argues that he did not knowingly and intentionally waive his *Miranda* rights because he was too intoxicated to comprehend the rights as read to him. The evidence adduced at the suppression hearing shows that Defendant was properly *Mirandized* at the time the search warrant was executed and coherently waived those rights, and, thus, none of the statements at issue here require suppression. Therefore, Defendant's motion will be denied.

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself." Due to pressures inherent in custodial interrogations, the Supreme Court held in *Miranda v. Arizona*, 384 U.S. 436 (1966), that a defendant's statement that is the product of a custodial interrogation cannot be used against him unless it is preceded by certain warnings. *Miranda*, 384 U.S. at 479 (1966). The Government does not dispute that Defendant was in custody at the time of the statements.

> A *Miranda* violation exists if the defendant unambiguously invokes his right to remain silent and the prosecution fails to prove a valid waiver

7

of the right to remain silent. When a defendant fails to remain silent and, instead, willingly speaks to the police, a finding that the defendant failed to invoke his *Miranda* right to remain silent is justified. Further, if the prosecution shows that *Miranda* warnings were given to the defendant, the defendant understood them and then provided an uncoerced statement, a valid waiver of the *Miranda* right to remain silent has occurred.

*Sullivan v. Kuffman*, No. 15-cv-5937, 2017 WL 2962775, *11 (E.D. Pa. Mar. 16, 2017), *report and recommendation adopted*, No. 15-cv-5937, 2017 WL 2957866 (E.D. Pa. July 11, 2017), *certificate of appealability denied sub nom. Sullivan v. Superintendent Smithfield SCI*, No. 17-cv-2732, 2017 WL 7689596 (3d Cir. Dec. 18, 2017) (citing *Berghuis v. Thompkins*, 560 U.S. 370, 381-84 (2010)).

Defendant's arguments rest solely on his assertions that Officer Miller and Detective Fenstermacher lied about the *Miranda* warnings and entirely fabricated the statements allegedly made by Defendant. The court finds no reason to disbelieve the testimony of either Officer Miller or Detective Fenstermacher. The only inconsistency in their testimony is that Officer Miller stated that Defendant nodded in the affirmative when asked if he understood his *Miranda* rights while Detective Fenstermacher heard an audible affirmation. (Doc. 55, pp. 48, 58-59.) In contrast, Defendant's testimony was contradictory at times and was self-serving, casting doubt on his overall credibility. At times, he avers that he made statements to law enforcement, but was coerced into doing so or did so without receiving proper *Miranda* warnings. At other points, he states that he made no statements whatsoever

and alleges that law enforcement fabricated those statements. (*Compare id.* at 74 *with* Doc. 27, pp. 3-4.) Moreover, Defendant's account of his previous night's escapades lacks indicia of credibility. Defendant remembers the details of his night with the utmost clarity, save the number of drinks he consumed between midnight and 2:00 a.m. Despite this, he asserts that he was too intoxicated to understand *Miranda* warnings, not at the time he left the bar in Baltimore, but more than four hours later when the warrant was executed. Although drinking to that extent is not an impossible task, it is difficult to believe that Defendant was so intoxicated, yet remembers with clarity the events that occurred during the execution of the warrant. *See, e.g., United States v. Briggs*, No. 06-cr-715, 2008 WL 1745661 (E.D. Pa. Apr.14, 2008) (finding "no credible evidence upon which to conclude that defendant was unable to give a valid waiver of his *Miranda* rights due to intoxication" where "the only evidence of intoxication in this case was defendant's self-serving testimony to that effect."); *see also United States v. Phuong Le*, No. 09-cr-719, 2011 WL 913260, *4 (E.D. Pa. Mar. 11, 2011) (same).

Thus, the court finds the testimony of Officer Miller and Detective Fenstermacher credible and does not find Defendant's testimony on these issues to be credible. *See United States v. Perminter*, No. 10-cr-204, 2012 WL 642530, *7 (W.D. Pa. Feb. 28, 2012) (citing *United States v. Peterson,* 622 F.3d 196, 201 (3d Cir. 2010) (noting that it is the District Court's role to weigh the evidence and

9

the credibility of the witnesses on a motion to suppress)). Accordingly, the court concludes that Defendant properly received *Miranda* warnings, understood them, and willingly made statements up until the time he declined to make a written statement at the York County Drug Task Force office.

**B. Defendant's Motion to Suppress Physical Evidence**

Defendant next argues that the evidence recovered from a search of his residence was invalid because the search warrant was not based on probable cause. In determining whether probable cause exists to support the issuance of a search warrant, courts consider the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). The judicial authority issuing the warrant must decide whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at 238. Direct evidence linking a residence to criminal activity is not required to establish probable cause. *United States v. Burton*, 288 F.3d 91, 103 (2002). Specifically, Defendant argues that the search warrant is invalid because the Affidavit related only one incident where drugs were purchased from Maresch outside of 1145 E. King Street.

Defendant's argument attacks the premise that a judicial authority issuing a warrant may presume that drug dealers store drugs within their residence. As set forth by the Third Circuit, this premise is supported by three suppositions: "(1) that

10

the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities." *Burton*, 288 F.3d at 104. The logical counterpoint to these assumptions is that "the search of a drug dealer's home would be unreasonable if the Affidavit suggested no reason to believe contraband would be found there." *United States v. Stearn*, 597 F.3d 540, 559 (3d Cir. 2010). Arguing that the Affidavit was insufficient to show a reason to believe that contraband would be found in 1145 E. King Street, Defendant attempts to analogize this case to *United States v. Rodriguez*, No. 13-cr-619, 2014 WL 4413606 (E.D. Pa. Sept. 8, 2014), which held a search warrant to be invalid because it did not establish that the residence in question was used for the purpose of distributing drugs.

In *Rodriguez*, law enforcement submitted an affidavit of probable cause: (1) stating that the defendant met with two known drug dealers in a parking lot prior to their arrests on drug charges; and (2) suggesting that a third individual, who claimed to be the defendant's father, intended to transport drug proceeds using the defendant's car. 2014 WL 4413606. The only other evidence against the defendant was that he was "extremely nervous" when law enforcement visited his home prior to obtaining the warrant. In *Rodriguez*, there was no direct connection between the individual identified to be distributing drugs and the residence that was the subject

11

of the search warrant. In stark contrast, Officer Miller observed the CI make contact with Maresch, who was confirmed to be the resident of 1145 E. King Street, Maresch walked back into the residence, and returned to distribute drugs to the CI. This evidence alone provides some evidence of all three suppositions identified in *Burton*. *Rodriguez*, 2014 WL 4413606, at *3 ("The Third Circuit has concluded that 'some evidence' of each premise is required." (quoting *Stearn*, 597 F.3d at 566)). Thus, pursuant to the presumption described in *Burton*, the Affidavit sufficiently establishes probable cause that contraband would be found in the residence. Accordingly, the court finds that the warrant was valid and supported by probable cause, as set forth in the Affidavit signed by Officer Miller.

**C. Good Faith Exception**

Alternatively, even if this court were to conclude that the search warrant was invalid, the court would not be required to suppress the evidence found during the search as the good faith exception to the warrant requirement would apply in this case. The good faith exception allows the inclusion of evidence obtained pursuant to a search warrant later held to be invalid unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984). The good faith exception applies unless: (1) the affidavit supporting the warrant was deliberately or recklessly false; (2) the magistrate did not act in a neutral or detached fashion; 3) the affidavit

12

supporting the warrant was also lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was facially deficient and did not particularize the place to be searched or the thing to be seized. *United States v. Zimmerman*, 277 F.3d 426, 436-37 (3d Cir. 2002). None of the factors enumerated in *Zimmerman* exist in this case. Defendant has pointed to no element of the Affidavit that was false or any evidence that the judicial officer was not neutral or detached. The Affidavit sets forth numerous indicia that the residence in question would reasonably contain evidence of a crime, such as the drug activity carried out nearby and Maresch's entry into the house immediately prior to distributing drugs. Thus, it would not be unreasonable for law enforcement to believe that the Affidavit supported a finding of probable cause. Finally, there do not appear to be any facial deficiencies on the warrant. Accordingly, even if the Affidavit lacked indicia of probable cause, the court would conclude that the good faith exception applies and would deny Defendant's motion to suppress on that basis.

## IV. Conclusion

For the reasons set forth above, the court finds that the search warrant obtained for 1145 E. King Street in York, Pennsylvania was supported by probable cause, and, thus, the search of that residence was lawful. The court further finds that Defendant was properly *Mirandized* and voluntarily waived his *Miranda* rights. The court finds that Defendant's assertions to the contrary are not credible. Accordingly,

Defendant's motion to suppress statements and supplemental motion to suppress physical evidence obtained during a search of his residence will be denied. An appropriate order follows.

s/*Sylvia H. Rambo*_____
SYLVIA H. RAMBO
United States District Judge

Dated: May 13, 2019