IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 1:18-CR-131 |
| | : | |
| v. | : | (Judge Wilson) |
| | : | |
| ERIC BANKS | : | (Electronically Filed) |
| Defendant. | : | |

**BRIEF IN SUPPORT OF POST TRIAL MOTION FOR JUDGEMENT OF ACQUITTAL AND NEW TRIAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29 AND 33**

## I.      STANDARD OF REVIEW

In ruling on a motion for judgement of acquittal, "a district court must review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Brodie*, F.3d 123, 133 (3d Cir. 2005) (internal quotations omitted). During this inquiry, the government's evidence is not viewed "in isolation, but rather, in conjunction and as a whole." *Id.* at 134. "The court must determine whether all the pieces of evidence, taken together, make a strong enough case to let a jury find the defendant guilty beyond a reasonable doubt." *Id.* (internal quotations omitted). This record, viewed in the light most favorable to the Government, does not provide a sufficient basis to find Mr. Banks guilty beyond a reasonable doubt.

Under Rule 33 of the Federal Rules of Criminal Procedure, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the

Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). "However, even if the court believes that the verdict is contrary to the weight of the evidence it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008) (quoting *Johnson*, 302 F.3d at 150).

## II.    ARGUMENT

### A.   THERE WAS INSUFFICIENT EVIDENCE TO PROVE ERIC BANKS WAS GUILTY OF CONSPIRACY UNDER 21 U.S.C. §846

"To make out a conspiracy charge, the Government must show: (1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal." *United States v. Pressler*, 256 F.3d 144, 147 (3d Cir. 2001).

The jury heard testimony about this allegation through Erica Groff and Robert Maresch. The testimony was that Mr. Banks would have Erica and Robert drive him to drug deals; however, they would not witness the actual deals. Furthermore, it was alleged that Robert would make deals on behalf of or at the request of Mr. Banks. However, knowledge of drug activity is not the same as conspiracy with the same activity. Knowledge of activity or presence at the scene where activity occurs does not equate to a "unity of purpose."

It was testified clearly that any roll Erica and Robert took part in regarding any drug activity resulted in no benefit to either party. Neither Erica or Robert received compensation or benefit for their alleged role. It then begs the question as to what unified purpose did they share with Mr. Banks? What common goal did they share? Their testimony was that they were not drug dealers and everything that occurred was the sole direction and discretion of Mr. Banks. They alleged that this was a solo operation and Mr. Banks merely used Erica and Robert and

their home. Allegations were made that drugs were sold by Mr. Banks from the fall of 2017

through the first months in 2018; however, there was no substantive evidence provided to

support these allegations other than Erica and Robert's testimonies. Furthermore, no details were

provided other than broad and generic statements that drug deals occurred—again with no

testimony illustrating a common purpose or goal.

It is clear that Erica and Robert did not share a unified purpose or goal. Nor did they

share an intent to achieve any goal. The Government failed to provide sufficient evidence to

prove the elements of criminal conspiracy beyond a reasonable doubt, and Mr. Banks

respectfully requests that your Honor grant the within motion.

### B.  THERE WAS INSUFFICIENT EVIDENCE TO PROVE ERIC BANKS WAS GUILTY OF POSSESSION WITH THE INTENT TO DISTRIBUTE UNDER 21 U.S.C. §841

The charges against Mr. Banks allege three (3) counts of possession with the intent to

distribute three (3) different controlled substances: fentanyl, cocaine base, and cocaine

hydrochloride. Specifically, Mr. Banks is accused of possessing these drugs on January 19, 2018,

with the intent to distribute. These charges stem from the drugs that were actually found inside

the residence of 1125 E. King Street when the police executed their search warrant.

Inside the home, .02 grams fentanyl and 1.09 grams cocaine were found inside a pair of red

pants belonging to Mr. Banks. A separate baggie of .73 grams cocaine was found on the

bathroom sink, in the same room Erica was found flushing drugs down the toilet. Initially, the

officers in this case had no idea Mr. Banks was going to be present inside the residence when

they executed the search warrant. Rather, prior to entry into the home, Robert was the only

person officers were able to have visual contact with and, Robert was the only person to sell

drugs to a confidential informant. No officer observed Mr. Banks with drugs prior to entry into

the home, no drug deals were observed involving Mr. Banks, and no officer observed Mr. Banks handling any of the drugs inside the home. While some drugs were found inside Mr. Banks pants, the amount is far from a weight consistent with distribution. Rather, the Government's own expert, Trooper Wolfe, conceded that the above-mentioned drug weights are consistent with personal use amount.

While Mr. Banks was found inside 1125 E. King Street, there was no other connection between Mr. Banks and anything inside the residence. There was no mail, bills, or other documentation with Mr. Banks's name and 1125 E. King Street. In fact, the opposite was found when police found Mr. Banks license with an address other than 1125 E. King Street. Furthermore, there was nothing inside the room where Mr. Banks was discovered that belonged to Mr. Banks. While there was mention of clothes inside the room, Officer Hoover admitted that she could not say they belonged to Mr. Banks. Furthermore, there was no identifying information surrounding the baggies, scales, and related paraphernalia to Mr. Banks, other than his mere proximity to where they were found.

In addition to the arguments presented in the above section related to conspiracy, the Government failed to provide sufficient evidence that Mr. Banks possessed the aforementioned small amount of drugs with the intent to distribute them. On the contrary, the Government presented evidence that Mr. Banks made a statement acknowledging that he uses those drugs— which would be consistent with an amount Trooper Wolfe acknowledges would be personal use. The drugs found inside the red pants belonging to Mr. Banks was not packaged for sale. The Government provided no evidence that they were packaged in preparation of any sale. They had no cell phone messages or witnesses claiming to be a potential drug buyer to establish the drugs

were being used for anything other than personal use. Rather, the Government wants to conflate the arguments that if a person is a drug dealer, they can only sell drugs and not use them.

In the absence of actual drug sales, cell phone messages related to drug sales, photos, videos, or any concrete evidence substantiating that those drugs were something other than personal use, the Government relied on polluted witnesses. The sole evidence used by the Government is the unreliable testimony of cooperating witnesses testifying to preserve their own well-being—Erica and Robert. However, even their testimony failed to mention the aforementioned drugs and any allegations of Mr. Banks's intent to distribute the same.

## C. THERE WAS INSUFFICIENT EVIDENCE TO PROVE ERIC BANKS WAS GUILTY OF THE FIREARM CHARGES UNDER 18 U.S.C. §922 AND 924

The Government provided evidence that three (3) firearms were found inside the residence of 1125 E. King Street; however, they proved nothing further. The Government did not find those firearms in Mr. Banks's actual possession nor have any evidence that he possessed those firearms prior to January 19, 2018. As articulated above, Mr. Banks was a mere guest in the house of 1125 E. King Street. No DNA or fingerprints were conducted to establish that Mr. Banks actually ever even touched the firearms, let alone possessed them.

Additionally, no testimony was heard regarding Mr. Banks possessing a firearm in furtherance of drug trafficking. The only statements made along this issue were statements from Erica and Robert that Mr. Banks would possess a firearm sometimes when making a drug deal. The Government alleged that he possessed these firearms on January 19, 2018, and possessed them on that date in furtherance of drug trafficking. However, they proved that no drug trafficking even was occurring or did occur on that date.

Under § 924(c), the mere presence of a gun is not enough. "What is instead required is evidence more specific to the particular defendant, showing that his or her possession actually furthered the drug trafficking offense." *United States v. Sparrow*, 371 F.3d 85, 853 (3d Cir. 2004); *see also United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001)(stating "that the possession of a firearm on the same premises as a drug transaction would not, without a showing of connection between the two, sustain a § 924(c), conviction"). In making this determination, the following nonexclusive factors are relevant: the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found. *Sparrow*, 371 F.3d at 853 (internal citations omitted).

In 1995, the Supreme Court held that "using" a firearm under Section 924(c) required that the firearm be actively employed and did not include mere possession. *Bailey v. United States*, 516 U.S. 137, 143-44 (1995). In response to *Bailey*, Congress amended Section 924(c) to include possession of a firearm in furtherance of a crime. *United States v. Burnett*, 773 F.3d 122, 134 (3d Cir. 2014).

Thus, Congress's amendment post *Bailey*, emphasize that there must be something more than the mere presence of the firearm. It is clear that the firearm must be used to assist in the sale of the drugs. No testimony was elicited at trial claiming that Mr. Banks was viewed using either of the three (3) firearms to support any drug crime. Mere possession is insufficient. Not once did Erica or Robert provide testimony that the firearm was ever used, brandished, or threatened with during any alleged drug transaction. At best, the Government proved that, on occasion, Mr. Banks would possess a firearm. More so, neither Erica nor Robert ever identified the firearms in

questions as firearms they observed Mr. Banks allegedly possessing in furtherance of these drug crimes.  All evidence considered, in the light most favorable to the Government, is insufficient to prove that Mr. Banks possessed the firearm and that a firearm was possessed in furtherance of a drug crime.

### D.  A SERIOUS MISCARRIAGE OF JUSTICE CONTINUES TO OCCUR SO LONG AS THE VERDICT AGAINST ERIC BANKS STANDS

In the case at bar, the "interests of justice" demand a new trial pursuant to Federal Rules of Criminal Procedure 33 since the verdict against Mr. Banks constitutes a miscarriage of justice. Mr. Banks incorporates the above arguments herein. In addition to the above, the Government's case rests in the polluted hands of unreliable witnesses.

Both Erica and Robert were charged with crimes following the search of 1125 E. King Street on January 19, 2018. Despite the fact that all the drugs and firearms were found inside their residence, none were charged with the same charges as Mr. Banks. Robert was released from prison after January 19, 2018; however, he never made a statement to police until months later and provided contradictory information. Erica was not charged immediately, but she was charged after Mr. Banks's preliminary hearing, went on the run from police, became incarcerated, was released by the Commonwealth, and only then made a statement to the Government. Notably, she made numerous statements to the Government, drastically changing her story every time. Major details surrounding Mr. Banks's allegations became convoluted and evolved over time. For example, Erica's story changed from never seeing firearms inside the residence, never seeing Mr. Banks with firearms, to always seeing Mr. Banks with firearms; not knowing where the drug stash was, to never packaging drugs, to assisting in packaging drugs; and telling police that Mr. Banks handed her a firearm and no drugs, to being handed no firearm and cocaine, to being handed a firearm, heroin, and cocaine. Furthermore, in court, she admitted through a recorded

prison call that Mr. Banks never handed her anything when the police entered the residence. As she told more stories to the Government, her story evolved to fit the Government's allegations.

Furthermore, Erica and Robert have been delaying their pending charges for over three (3) years. While they admitted to the allegations against them in open court, they continued their matters for years in hopes of getting their charges reduced or dismissed based on their testimony. While Robert openly admitted this, Erica incredulously denied that she expected anything in return for her testimony.

Contradicting testimony was rampant throughout the Government's case. It occurred between police officers like when Officer Hoover testifying Mr. Banks never verbally acknowledged his Miranda Warnings while Sergeant Fentsermacher claimed he clearly gave a verbal response. Contradictions occurred between Erica and Erica and Robert, as mentioned above. Contradictions were prevalent between Erica, Robert, and the officers. Erica and Robert were adamant that Mr. Banks clearly and unequivocally admitted that everything in the house was his. He did this allegedly when Erica, Robert, and Mr. Banks were all congregated together downstairs in front of numerous police officers, in ear shot of all police officers. However, not one police officer ever heard Mr. Banks say a single word while downstairs when all three occupants were congregated together.

The Government's case relied on speculation, uncorroborated and unreliable testimony, and poor investigative techniques by law enforcement. For all the aforementioned reasons, the verdict is against the weight of the evidence and a miscarriage of justice continues to occur while Mr. Banks's verdict stands.

# **CONCLUSION**

For the foregoing reasons, Mr. Banks respectfully requests that this Honorable Court grant the Post-Trial Motion for Judgement of Acquittal and Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 29(a) and 33.

Respectfully submitted,

Date:   October 22, 2021

*/s/ Jonathan R. White*
JONATHAN R. WHITE, ESQUIRE
Attorney ID #313808
DETHLEFS-PYKSOH LAW GROUP LLC
2132 Market Street
Camp Hill, PA 17011
Tel. No. (717) 425-9479
Fax No. (717) 975-2309
*jwhite@dplglaw.com*

*Attorney for Eric Banks*

## <u>CERTIFICATE OF WORD COUNT</u>

I, Jonathan R. White, Esquire, do hereby certify that, pursuant to L.R. 7.8(b)(2), this Brief

in Support contains less than 10,000 words.


Date:   October 22, 2021                    */s/ Jonathan R. White*
                                              JONATHAN R. WHITE, ESQUIRE
                                              Attorney ID #313808
                                              DETHLEFS-PYKOSH LAW GROUP LLC
                                              2132 Market Street
                                              Camp Hill, PA 17011
                                              Tel. No. (717) 425-9479
                                              Fax No. (717) 975-2309
                                              *jwhite@dplglaw.com*

                                              *Attorney for Eric Banks*

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan R. White, Esquire, do hereby certify that I served a copy of the foregoing

Brief in Support of Post-Trial Motion, via Electronic Case Filing to the following:

CARLO MARCHIOLI, ESQUIRE
United States Attorney's Office
228 Walnut Street, Room 220
Harrisburg, PA 17101
carlo.d.marchioli@usdoj.gov

<u>**Via USPS**</u>
ERIC BANKS
York County Prison
3400 Concord Road
York, PA 17401


Date:   October 22, 2021          /s/ Jonathan R. White
                                  JONATHAN R. WHITE, ESQUIRE
                                  Attorney ID #313808
                                  DETHLEFS-PYKOSH LAW GROUP LLC
                                  2132 Market Street
                                  Camp Hill, PA 17011
                                  Tel. No. (717) 425-9479
                                  Fax No. (717) 975-2309
                                  jwhite@dplglaw.com

                                  *Attorney for Eric Banks*