# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Crim. No. 1:18-CR-0131 |
| v. | : |
| ERIC BANKS | : Judge Jennifer P. Wilson |

## MEMORANDUM

This is a criminal case in which Defendant Eric Banks ("Banks") was charged in a six-count superseding indictment with conspiracy to distribute heroin; possession with intent to distribute fentanyl, cocaine hydrochloride, and cocaine base; possession of a firearm in furtherance of drug trafficking; and possession of a firearm by a previously convicted felon. (Doc. 68.) On October 8, 2021, following a four-day jury trial, the jury found Banks guilty on all counts. The case is presently before the court on Banks' motion for judgment of acquittal and new trial. (Doc. 171.) Because the court concludes that sufficient evidence supports the jury's verdict, the court will deny the motion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 18, 2018, a grand jury indicted Banks for possession with intent to distribute heroin, possession with intent to distribute cocaine hydrochloride, possession of a firearm in furtherance of drug trafficking, and possession of a firearm by a previously convicted felon. (Doc 1.) Banks filed a motion to

1

suppress statements he made at the time of his arrest, which was ultimately denied after a hearing. (Docs. 26, 60.) A grand jury later indicted Banks in a superseding indictment of conspiracy to distribute heroin in violation of 21 U.S.C. § 846 (Count 1); possession with intent to distribute fentanyl, cocaine base, and cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts 2, 3, and 4); possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A) (Count 5); and possession of a firearm by a previously convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a)(2). (Doc. 68.)[1]

On October 8, 2021, following a four-day jury trial, the jury convicted Banks on all counts. The evidence at trial established that Banks, with the assistance of Erica Groff ("Groff") and Robert Maresch ("Maresch"), was selling controlled substances from 1145 East King Street in York, Pennsylvania. The evidence also established that Banks possessed at least one firearm in furtherance of drug trafficking, while being a previously convicted felon who was not permitted to possess a firearm.

The trial evidence established that Groff and Maresch initially assisted Banks with making heroin deliveries, and then Banks eventually moved into 1145 East King Street with Groff and Maresch. After the trio resided together, Groff and Maresch continued to drive Banks to make deliveries. Maresch also made

---

[1] On September 2, 2021, this case was reassigned to the undersigned.

heroin deliveries on his own for Banks. Groff assisted with packaging heroin and other drugs for Banks. Additionally, Maresch, on behalf of Banks, sold fentanyl[2] from 1145 East King Street to a confidential informant twice in controlled buys. During a search of the residence, law enforcement officers found materials used for drug distribution in the room in which Banks was sleeping, cash in Banks' pants pocket and dresser, and fentanyl and an Access card in someone else's name in Banks' pants pocket.

After Banks was arrested, several recorded phone calls between Banks and Groff revealed that she was continuing to sell heroin on his behalf to customers at his direction. Banks was giving Groff instructions and contacts for his suppliers and customers. Additionally, the phone calls corroborate the fact that Groff attempted to dispose of a firearm the morning the police searched the residence and that she flushed drugs down the toilet at Banks' direction.

Following his conviction on all counts of the superseding indictment, Banks moved for judgment of acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29(c) and for a new trial pursuant to Federal Rule of Criminal Procedure 33(a) on October 22, 2021. (Doc. 172.) The Government filed a brief in opposition on November 3, 2021. (Doc. 178.) After the court granted Banks' trial

---

[2] Trial testimony indicates that the confidential information who arranged the purchase of the drugs from Maresch asked for heroin, but later analysis of the substance revealed that it was fentanyl.

counsel's motion to withdraw, *see* Docs. 179 & 180, Banks was appointed new counsel who ultimately determined that no reply brief was necessary. (Doc. 184.) Thus, the motion is ripe for resolution.

## STANDARD OF REVIEW

In ruling on a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, the court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)). The court must be careful to find that evidence is insufficient only when "the prosecution's failure is clear." *Id.* at 477. In addition, the court must not usurp the jury's role "by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).

Pursuant to Rule 33(a), a court "may vacate any judgment and grant a new trial if the interest of justice so requires." In contrast to the standard applied in a sufficiency of the evidence claim, "when a district court evaluates a Rule 33 motion, it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v.*

*Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). As a result, "even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Silveus*, 542 F.3d 993, 1004–05 (3d Cir. 2008).

## DISCUSSION

**A. Sufficiency of Evidence: Conspiracy to Distribute Heroin**

Count 1 of the superseding indictment charged Banks with conspiracy to distribute heroin between October 2017 and February 2018. (Doc. 68, p. 1.) The Government was required to prove "(1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal." *United States v. Pressler*, 256 F.3d 144, 147 (3d Cir. 2001).

Banks argues that there was no unity of purpose and, therefore, no intent to achieve a common goal between Banks, Maresch, and Groff. (Doc. 172, pp. 2–3.)[3] Banks asserts that while Maresch and Groff testified that they drove Banks to drug deals, they did not actually witness the deals and that mere knowledge of drug trafficking is not sufficient to constitute a unity of purpose to establish a conspiracy. (*Id.* at 2.) Further, Banks argues that neither Maresch nor Groff

---

[3] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

received any compensation or other benefit for their alleged roles and that all of their actions were at the direction of Banks, which does not prove that there was a unified purpose. (*Id.*)

In response, the Government argues that Maresch and Groff had more than mere knowledge of drug activity. Based on their testimony, Officer Hoover's testimony regarding the controlled buys from Maresch, and the prison phone calls, it is clear that both Maresch and Groff were actively participating, at Bank's direction, in his drug trafficking activities. (Doc. 178, p. 7.) While the Government asserts that it is not required to prove that Maresch and Groff received any compensation or benefit for their roles in the conspiracy, Maresch and Groff both testified to receiving heroin in exchange for helping Banks and they testified that he helped to cover living expenses at the house. (*Id.*, at 8.) Furthermore, the conspiracy to distribute heroin charge contains a date range that spans Banks' original arrest through to the prison phone calls between Banks and Groff. (*Id.*, at 7.) On those calls, Banks provided Groff with specific, and sometimes coded, instructions on contacting his suppliers and customers so she could continue to sell heroin on Banks' behalf. (*Id.*)

The court agrees with the Government's arguments. The uncontroverted evidence at trial established that Banks was living at 1145 East King Street with Maresch and Groff; that Maresch was driving Banks to drug deals; that Maresch

was conducting some drug sales on Banks' behalf; that Groff was assisting with the packaging of drugs for Banks; and that Banks and Groff continued to communicate via phone after his arrest so that Banks could provide directions to Groff to continue making heroin sales on his behalf. Reviewing the record in the light most favorable to the Government, as is required, the court concludes that any rational trier of fact could have found proof beyond a reasonable doubt on this count based on the available evidence. Therefore, Bank's motion for judgment of acquittal on the conspiracy to distribute heroin charge will be denied.

### B. Sufficiency of Evidence: Possession with Intent to Distribute Fentanyl, Cocaine Base, and Cocaine Hydrochloride

Counts 2, 3, and 4 of the superseding indictment charged Banks with possession with intent to deliver fentanyl, cocaine base, and cocaine hydrochloride on or about January 19, 2018. (Doc. 68, pp. 2–4.) The Government was required to prove "(1) Banks possessed a mixture or substance containing a controlled substance; (2) that Banks possessed the controlled substance knowingly and intentionally; (3) that Banks intended to distribute the controlled substance; and (4) that the controlled substance was fentanyl as to count two, cocaine base as to count three, and cocaine hydrochloride as to count four." *See* 21 U.S.C. § 841(a)(1); *see also* Third Cir. Model Jury Instruction § 6.21.841A.

On this score, Banks' arguments center around the contention that he was not living at 1145 East King Street and that the drugs recovered from the residence

should not have been attributed to him. (Doc. 172, pp. 3–5.) Banks argues that the drugs found in the pockets of his pants were consistent with personal use rather than distribution. (*Id.* at 4.) He further argues that he was not involved in the controlled buys, no one observed him selling or handling drugs in the home, that there was no proof that he lived there, and that there was a different address on his driver's license. (*Id.*) Banks then contends that the baggies, scales, and paraphernalia also cannot be tied to him by anything other than his proximity to where they were found. (*Id.*) Because the Government's evidence on these counts heavily relied upon the testimony of Groff and Maresch, whom Banks characterizes as "polluted witnesses," Banks asserts that there was not sufficient evidence for the jury to return a guilty verdict. (*Id.* at 5.)

      The Government first asserts that Banks' statement to Sergeant Fenstermacher confirms that the drugs belonged to him and that he had recently received three to four grams of heroin from his supplier, an ounce of cocaine base was fronted to him, and that he would be willing to cooperate against his suppliers. (Doc. 178, p. 9.) Furthermore, Groff testified that she packaged drugs, including the cocaine base found in the bathroom, for Banks at his direction. (*Id.*) Additionally, the Government points to other evidence adduced at trial, such as Banks' attempts to contact his suppliers in an effort to cooperate with law enforcement, the recorded prison phone calls in which Banks directed Groff to

8

continue drug sales on his behalf, the drug-packaging materials found in the bedroom that Maresch and Groff testified belonged to Banks, and the lack of drug-use paraphernalia in the house. (*Id.* at 9–10.)

The court again agrees with the Government's arguments as to these counts. The jury, as the finder of fact, is free to determine the credibility of the witnesses at trial. Banks argued at trial and in his brief that Maresch and Groff were not credible because they were only testifying in this case to obtain a favorable result in their related, underlying state criminal cases. Both Maresch and Groff testified that Banks moved into their residence, was helping to cover some of the living expenses at 1145 East King Street, and that he sometimes provided them with free drugs in exchange for their assistance. Maresch drove Banks to conduct drug sales and sometimes conducted sales on Banks' behalf, while Groff helped with packaging the drugs for street-level distribution. Maresch and Groff's testimony was corroborated by the testimony of the law enforcement officers who testified at trial about Banks' statements and his attempt at cooperating with law enforcement, as well as the common use of the drug-packaging materials recovered from the residence. Lastly, it is clear from the prison phone calls that Banks was providing instructions to Groff to continue his drug trafficking operation on his behalf.

As to the credibility of Maresch and Groff, the court is not permitted to weigh credibility and assign weight to the evidence, substituting its judgment for

that of the jury. *See Brodie*, 403 F.3d at 133. Thus, reviewing the record in the light most favorable to the Government as required, the court finds that any rational trier of fact could have found proof of guilt beyond a reasonable doubt on the possession with intent to deliver controlled substances charges. Therefore, Banks' motion for judgment of acquittal on Counts 2, 3, and 4 will be denied.

### C. Sufficiency of Evidence: Possession of Firearms

Counts 5 and 6 of the superseding indictment charged Banks with possession of a firearm in furtherance of drug trafficking and possession of a firearm by a previously convicted felon on or about January 19, 2018. (Doc. 68, pp. 2–4.) As to both counts, Banks contests that he possessed the firearms, and that he possessed a firearm "in furtherance" of drug trafficking as to Count 5.

Banks reiterates his arguments that he was not residing at 1145 East King Street and notes that the firearms were not in his actual possession on January 19, 2018. (Doc. 172, p. 5.) Banks asserts that he was merely a guest at the residence on the morning law enforcement entered with a warrant. (*Id.*) Further, he argues that the mere presence of a gun is not enough to warrant a conviction under 18 U.S.C § 924(c) without further evidence that the firearm was possessed in furtherance of drug trafficking. (*Id.* at 5–6.)

The Government has argued in response that Sergeant Fenstermacher and Officer Hoover both testified about Banks pointing out the brown bag containing

two guns in the middle bedroom on the second floor of the residence searched. (Doc. 178, p. 11.)  Additionally, Sergeant Fenstermacher testified that Banks told him that he handed off a third gun to Groff to get rid of when they realized police were entering the residence.  (*Id.*)  Furthermore, Groff and Maresch testified that neither of them owned the handguns recovered from the residence.  (*Id.*) According to the Government, this was sufficient evidence upon which the jury could have relied in returning a guilty verdict on the firearms charges.  (*Id.*, at 13.)

The court agrees.  The evidence is sufficient for the court to conclude that any rational trier of fact could have found beyond a reasonable doubt that Banks possessed at least one of the firearms listed in the superseding indictment.  The evidence includes Banks's statement to Sergeant Fenstermacher about why he had firearms in the house, which he said was for protection.  Banks also pointed out a bag to Officer Hoover and accurately stated that there were two handguns in it. Banks stated to Sergeant Fenstermacher that he gave a small Ruger to Groff to get rid of it, and then law enforcement recovered a Ruger in the nearby bathroom trash can.

The Government is not required to prove that Banks physically held the firearm, and thus had actual possession of it.  In fact, so long as the Government proves that the firearms were within Banks' control—that he had the ability to take

possession of it when he wanted to—the Government has proved possession. *See Henderson v. United States*, 575 U.S. 622, 626 (2015).

Banks also specifically contests that any alleged possession of the firearms was in furtherance of drug trafficking. Here, Banks argues that neither Groff nor Maresch ever identified the firearms in question as firearms they observed Banks possessing in furtherance of drug trafficking crimes. (Doc. 172, pp. 6–7.) The Government's response is to point to the factors set forth by the Third Circuit to determine whether one's possession of a firearm was in furtherance of a drug trafficking crime. (Doc. 178, pp. 11–13.) The factors to examine are: the type of criminal activity that is being conducted; accessibility of the firearm; the type of firearm; whether the firearm is stolen; whether the defendant possesses the firearm legally or illegally; whether the firearm is loaded; the time and circumstances under which the firearm is found; and proximity to drugs or drug profits. *See United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004).

Applying those factors here, the Government argues that Banks was engaged in the street-level distribution of heroin, cocaine hydrochloride, and cocaine base and admittedly possessed the firearms for protection. The firearms were easily accessible, including one that Banks had on his person when police arrived. The firearms are all handguns. Two of the three firearms were stolen. It is unlawful for Banks to possess firearms. All three guns were loaded. The firearm that Banks

handed to Groff was recovered in the bathroom a few feet away from cocaine base, and the firearms in the bedroom were in the room adjacent to Banks' bedroom where fentanyl and cocaine hydrochloride were found. All of the guns were found first thing in the morning during the execution of a search warrant, despite Banks' attempt to get rid of one as police entered the residence. (Doc. 178, pp. 11–13.)

Viewing this evidence in the light most favorable to the Government, the jury had a sufficient basis to find Banks guilty on Count 5. There was sufficient evidence for the jury to find that Banks possessed at least one of the firearms and that he did so in furtherance of drug trafficking activities. Thus, Bank's motion for judgment of acquittal on Counts 5 and 6 will be denied.

### D. Motion for New Trial

Lastly, Banks alternatively moves for a new trial pursuant to Federal Rule of Criminal Procedure 33(a). Rule 33(a) permits a court to vacate a judgment and grant a new trial "if the interest of justice so requires." Here, Banks' argument is centered around Groff's and Maresch's credibility, or lack thereof. (Doc. 172, pp. 7–8.) Banks asserts that they were both charged with crimes following the search of the East King Street residence, but both faced lesser charges than Banks did. (*Id.* at 7.) Groff provided numerous statements to the Government about her involvement, which changed over time, and Maresch did not initially provide a statement to police. (*Id.*) Their criminal charges are still pending in state court

and, while Groff denied it, Maresch admitted that he hoped testifying against Banks would result in some sort of benefit as to his pending charges. (*Id.* at 8.)

Banks also argues that there was contradictory testimony throughout the trial, noting discrepancies in law enforcement testimony and discrepancies between the testimony of Groff and Maresch. (*Id.*) As a result, Banks contends that the Government's case relied on speculation, uncorroborated and unreliable testimony, and poor investigative techniques by law enforcement, requiring the court to grant his motion for a new trial. (*Id.*)

The Government argues that it is not a court's role, on a Rule 33 motion, to re-examine the credibility of witnesses and that Maresch and Groff's testimony was generally consistent and corroborated by other evidence, including law enforcement testimony, Banks' statement to law enforcement, physical evidence seized from the evidence, and recorded prison phone calls. (Doc. 178, pp. 13–14.)

The court agrees that the jury's verdict was consistent with all of this evidence and that Banks has not demonstrated that a miscarriage of justice has occurred here. It is the responsibility of the jury to determine credibility of witnesses and "to decide whether or not to believe [the] testimony." *United States v. Salahuddin*, 765 F.3d 329, 346 (3d Cir. 2014). Cross-examination, closing arguments, and jury instructions regarding the motivations of a cooperating witness, potential bias, and inconsistent testimony are the means by which the

jurors were provided with information and instruction to allow them to make the credibility assessments. *Id.* The court will not disturb the jury's credibility determinations. Banks' motion for a new trial will be denied.

## CONCLUSION

For the foregoing reasons, Banks' motion for judgment of acquittal and for new trial will be denied. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: March 4, 2022